## VENUE LEASE AGREEMENT

This VENUE LEASE AGREEMENT (the "Agreement") is made this 20 day of February, 2019 (the "Effective Date"), by and between TRICKLE PRODUCTIONS, LLC, a limited liability company organized and existing under the laws of the State of Ohio ("Landlord"), and APEX EVENT MANAGEMENT, LLC, a limited liability company organized and existing under the laws of the State of Delaware ("Tenant"). Landlord and Tenant are sometimes referred to herein as the "Parties".

### RECITALS

WHEREAS, Tenant desires to present an annual music festival known as the Lost Lands Music Festival (the "Event(s)"); and

WHEREAS, Landlord owns, controls and manages the Site, as defined below; and

WHEREAS, Tenant desires to hold the Events at the Site; and

WHEREAS, Landlord desires to grant Tenant a lease to hold the Events at the Site.

NOW THEREFORE, in consideration of the covenants and mutual agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties mutually agree as follows:

1.  <u>Grant of Rights</u>:

    1.1    Landlord hereby leases to Tenant, and Tenant hereby leases from Landlord, subject to the agreements, conditions and provisions of this Agreement, that certain real property located in Thornville, Ohio and commonly known as "Legend Valley", as well as certain adjacent real properties and any existing improvements thereon (collectively, the "Site"). The Site is shown and outlined on Exhibit A, and is comprised of the "Venue" area and the adjacent "Camping" areas, each as shown on Exhibit A. The parties hereby acknowledge and agree that certain portions of the Camping areas of the Site are not owned by Landlord but are instead leased by Landlord from third parties. Tenant shall not be deemed a party to such leases, nor have any obligations or liabilities thereunder. Landlord agrees to keep such other leases in effect during the Term of this Agreement, and if for any reason whatsoever during the Term of this Agreement such other leases are terminated or Landlord otherwise no longer has the right to allow Tenant to occupy and use such areas for the purposes allowed under this Agreement, then Landlord and Tenant agree to work together in good faith to promptly identify and secure the use of replacement areas.

    1.2    During those dates and times of the Term (the "Dates and Times"), as set forth on the schedule listed in Exhibit B which is attached and incorporated by this reference, Tenant shall have exclusive use of the Site including, without limitation, to access enter the Site and use the Site as a concert and event venue and all related uses allowed under applicable laws including, without limitation, camping, parking, concessions, retail, signage, multimedia production, and any other uses related to Events, as well as the storage of trailers, vehicles, equipment, supplies, props, and materials at locations on the Site.

    1.3    Without limiting the generality of the foregoing, Tenant has the sole and exclusive right:

        (i)    to promote the Events, sell tickets to the Events and tape, photograph and otherwise record the Events, including, without limitation, any preproduction, production and other production-related activities in connection therewith.

EXHIBIT E-1

Scanned with CamScanner

(ii)     to exploit the Events and any other material pertaining to the Events throughout the universe in perpetuity, by all means and media now known or subsequently developed and the unlimited right to grant, license, sell, assign or otherwise convey any or all of such rights to third parties.

(iii)     to solicit sponsorships in connection with the Events, sell tickets in connection with the Event, sell merchandise in connection with the Events and otherwise exploit any and all rights in and to the Events, and Owner shall not be due any compensation in connection therewith except as strictly provided herein.

(iv)     to select all musical or other talent hired by Tenant for the Events in Tenant's sole, unfettered discretion.

1.4     During the set up period as specified in Exhibit B, Tenant may construct and set up all equipment and temporary structures needed for the production of each Event ("Set Up"), including but not limited to, booths, tables, tents, lighting, sound systems, stages, fences and any other necessary equipment in accordance with the terms of this Agreement and conditions of any permits required to be obtained for each Event. Immediately following each Event, Tenant will tear down and remove all items and equipment used in the production of the Event and remove all trash and debris from the Site ("Tear Down"). Tenant must move out of the Site by the date established in Exhibit B.

1.5     Subject to the agreements, conditions and provisions of this Agreement, during the Term, Landlord may use and/or license and/or lease to others the right to use the Site for other events, provided that Landlord shall not use and/or license and/or lease to others the right to use the Site during the Term for so-called electronic dance music events, except for Resonance Music and Arts Festival and The Werk Out Music and Arts Festival.

2.     Compensation:

2.1     In consideration of the Site and this Agreement, and without limiting the other consideration given to Landlord by Tenant under this Agreement, which consideration is hereby acknowledged as being of value and sufficient consideration to Landlord for the rights granted to Tenant hereunder, the Tenant agrees to pay to Landlord the amounts set forth below in this Section 2 (collectively, "Rent"). The parties agree that the Rent is inclusive of all taxes, fees, assessments, insurance costs, maintenance costs, and other operating costs and expenses of Landlord, excluding only any reimbursable expense expressly set forth elsewhere in this Agreement. As Rent the Tenant shall pay the following amounts to Landlord: (i) nine dollars ($9.00) per person that purchases a full price ticket for any Event that is sold to the public and not refunded. The Rent payable based on tickets and attendance above shall be paid on the following schedule:

(i)     one-half (1/2) no later than the first of May prior to each Event, with the amount determined with respect to ticket sales as of the prior April 15; and

(ii)     the remainder no later than thirty (30) days after each Event.

2.2     The parties acknowledge and contemplate that a certain number of complimentary tickets and/or access will be provided, and that Tenant is not required to pay Landlord rent for such complimentary tickets and/or access.

EXHIBIT E-2

Scanned with CamScanner

2.3     The Parties intend that a fee will be charged for admission to the event. The fee will be set by Tenant.

3.     Term of Agreement:

3.1     The term of this Agreement (the "Term") consists of an initial period (the "Initial Period") and the Option Period(s), if any. The Initial Period begins on the Effective Date and ends on December 31, 2019.

3.2     Tenant shall have nine (9) consecutive and irrevocable options to extend the Term for a period of one (1) calendar year each (each, an "Option Period") with written notice to Landlord given at least thirty (30) days before the end of the Initial Period, or the then-existing Option Period, as the case may be.

3.3     For the avoidance of doubt, the Dates and Times for each year of the Term are applicable only if Tenant exercises its option for such year. For the avoidance of doubt, in the year 2022, the Dates and Times are listed as alternatives, with the exact dates to be elected by Tenant in its sole discretion.

4.     Condition of Site:

4.1     The Site shall be delivered in "as-is" condition. The existing condition will be jointly documented and agreed upon before each Event during a walk through with representatives from Landlord and Tenant.

4.2     During the Term, Tenant shall only be responsible, at its sole cost and expense, for repairing any damage to the Site caused by the actions of Tenant and/or its guests, employees, agents, and contractors including, without limitation, attendees of any Event. Damages will be jointly documented and a scope of work for repair or replacement of damages will be jointly agreed upon during a post-Event walk through with representatives from Landlord and Tenant which shall occur no later than seven (7) days after each Event. Nothing in this Agreement shall make Tenant in any way responsible or liable for any conditions with respect to the Site (including hazardous substance conditions) which (i) exist prior to the Effective Date, or (ii) occur during the Term due to the acts or omissions of anyone other than Tenant and its guests, employees, agents, and contractors, including the attendees of any Event.

4.3     At all times, Landlord is responsible for all other repairs and maintenance of the Site including, without limitation, general repair and maintenance, tree trimming, brush and vegetation management, and any repairs required due the actions of Landlord or its employees, agents, guests, and/or contractors.

4.4     Each party shall be required to perform its obligations within a reasonable period of time after the need for such work arises, and shall perform such work in accordance with all applicable laws and good business practices. Without limiting the foregoing, each party shall be solely responsible for all trash, debris, and waste removal and handling.

5.     Alterations; Improvements:

Tenant shall not make any permanent improvements to the Site without Landlord's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. Landlord shall have the right to require that Tenant remove any improvements made by Tenant at the end of the Term, so long as such requirement is clearly elected by Landlord in writing to Tenant at the time Landlord provides its consent. Tenant will not permit any liens to be imposed on the Site as a result of any work done to the Site by

EXHIBIT E-3

Scanned with CamScanner

Tenant, and if Tenant receives written notice that a lien has been or is about to be filed against the Site on account of such work, it will give Landlord written notice thereof and will cause such lien to be bonded or discharged as soon as possible thereafter.

6. Staffing, Utilities and Services:

6.1 Tenant shall provide, at Tenant's sole expense, any gatemen, building tradesmen, security forces, medical personnel or other staff required for the Event.

6.2 Tenant shall be responsible for obtaining, at Tenant's sole cost and expense, all services and utilities that Tenant may need or desire with respect to Event. Landlord agrees to reasonably assist Tenant in obtaining all such utilities and services.

7. Permits and Licenses:

7.1 Tenant is responsible for obtaining all permits and/or licenses that are necessary for the Events including, without limitation, food, sanitation or liquor licenses, structure/tent/building, transportation and/or work permits.

7.2 Tenant will provide Landlord with copies of all obtained permits, licenses and/or any other documentation upon Landlord's reasonable request.

8. Construction:

8.1 Tenant shall provide, at Tenant's sole expense, the labor, services, materials, and equipment necessary to ensure the protection of the grass and for construction of any temporary structures, booths, fences or the like which it requires in connection with the Events.

8.2 During the presentation of the Events and during Set Up and Tear Down, Tenant shall be responsible for any lighting, including theatrical lighting, which it requires in addition to the normal lighting provided by Landlord.

8.3 Tenant shall be responsible for any sound systems required for production of the Event.

9. Insurance:

9.1 At its sole cost and expense, Tenant shall maintain in full force and effect during the Term, a commercially reasonable policy or policies of General Liability Insurance, in such amounts and with such coverages that Tenant elects in its reasonable discretion and at a minimum the coverages that : ADD LAND OWNER are carried by the majority of operators of similar events to the Events in the State of Ohio. Landlord TO POLICY shall be named as an additional insured, as its interests may appear, under such liability insurance policies. Tenant shall not be required to maintain casualty insurance on the Site, nor on Tenant's personal property, equipment, or materials at any time located or stored thereon; provided Landlord shall not be required to insure Tenant's property either. Tenant shall deliver to Landlord certificates of all insurance reflecting evidence of required coverages above prior to any Event. All insurance carried by Tenant shall be issued by reputable insurers that are licensed to do business in the State of Ohio.

9.2 Landlord and Tenant each hereby waives on behalf of itself and its insurers any and all rights of recovery, claim, action, or cause of action, against the other, its agents, officers, or employees, for any loss or damage that may occur to the Site or any improvements thereto, or any personal property of such party therein, by reason of fire, the elements, or any other causes which are insured against under

Scanned with CamScanner

the terms of the any insurance policies actually carried by such party, and each party shall cause any such insurance policies to contain, or be endorsed with, a waiver of subrogation in accordance with the provisions of this paragraph.

  9.3  To the extent permitted by law and except to the extent due to the negligence or willful misconduct of Landlord or its guests, employees, agents or contractors, Tenant agrees to protect, defend, indemnify, and hold Landlord harmless from and against any and all liabilities, claims, expenses, losses and damages (including reasonable attorney fees and costs), arising as a result of or in connection with any Tenant Events, or the actions of Tenant and its employees, agents, guests, and contractors on the Site during the Term. To the extent permitted by law and except to the extent due to the negligence or willful misconduct of Tenant or its guests, employees, agents or contractors, Landlord agrees to protect, defend, indemnify, and hold Tenant harmless from and against any and all liabilities, claims, expenses, losses and damages (including reasonable attorney fees and costs), arising as a result of or in connection with any Landlord Events, or the actions of Landlord and its employees, agents, guests, and contractors on the Site during the Term. The obligations set forth in this paragraph shall survive termination of this Agreement.

10.  Casualty Damage:

If a material portion of the Site is substantially damaged or destroyed by fire, flood, earthquake, windstorm, accident, or other calamity, Tenant shall have the right to elect to terminate this Agreement with at least thirty (30) days' prior notice to Landlord. Nothing in this Agreement shall make either Landlord or Tenant responsible for repairing any casualty damage; provided if any such damage occurs during the Term, and Tenant does not elect to terminate this Agreement, then Landlord agrees to work with Tenant in good faith to determine what actions Landlord might be willing to take, in its sole discretion, in order to allow Tenant to continue to use the Site for Events.

11.  Condemnation/Noise Ordinance:

  11.1  If the whole or any material portion of the Site is acquired or condemned by eminent domain or sold in lieu thereof, regardless of whether such taking is permanent or temporary in nature, Tenant may elect to terminate this Agreement, with at least thirty (30) days' prior written notice to Landlord. Any taking awards shall be the property of Landlord, but Tenant shall be allowed to make its own claims.

  11.2  If the whole or any material portion of the Site is or becomes subject to a noise ordinance that would materially and adversely affect the Event, Tenant may elect to terminate this Agreement, with at least thirty (30) days' prior written notice to Landlord.

12.  Taxes:

Landlord shall be solely responsible for and pay before delinquency any and all real property taxes of any kind levied against the Site and/or Landlord's interest therein. Tenant shall pay before delinquency all taxes, assessments, license fees, and other charges that are levied and assessed against any Events.

13.  Force Majeure:

It is mutually agreed that no Party shall be held responsible for any losses resulting from the failure to fulfill any terms, conditions or provisions of this Agreement, if the Party shall be delayed or prevented because of war, revolution, riot, or other disorder, fire, flood or act of God.

14.  Default:

Scanned with CamScanner

The occurrence of any of the following events on the part of either party shall be a default: (i) Tenant's failure to pay Rent, or either party's failure to pay the other party any other sum due and payable under this Agreement as and when such amount is payable, where such amount remains unpaid for ten (10) business days after the defaulting party's receipt of written notice of such failure; (ii) failure in the performance of any of a party's other covenants, agreements, or obligations hereunder, which failure continues for more than thirty (30) days after the defaulting party's receipt of written notice thereof; provided if such cure reasonably takes longer than thirty (30) days to complete, the defaulting party shall have a reasonable additional period of time to complete such cure so long as it commences such cure within the initial 30-day period and thereafter pursues such cure to completion with diligence; or (iii) either party shall become insolvent, admit in writing its inability to pay its debts, make a general assignment for the benefit of creditors, or commence any case, proceeding or other action seeking to have an order for relief entered on its behalf as a debtor or to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy. If any default occurs and remains outstanding, the non-defaulting party shall have all of the remedies available to it under applicable laws.

15. Quiet Enjoyment:

Tenant, upon paying the Rent herein reserved and performing and observing all of the other terms, covenants and conditions of this Agreement on Tenant's part to be performed and observed hereunder, shall peaceably and quietly have, hold and enjoy the Site during the Term hereof.

16. Assignment, etc.:

Tenant shall not encumber, assign or otherwise transfer this Agreement, or any right or interest in this Agreement or in the Site, without the prior written consent of Landlord, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing or anything in this Agreement to the contrary, Landlord hereby agrees that Tenant may, without the prior notice to or consent of Landlord, assign this Agreement to an entity acquiring or succeeding to substantially all of the business, or substantially all of a business unit, of Tenant, by merger, spin-off, reorganization, consolidation, acquisition (of assets or equity) or otherwise. The consent of Landlord to any particular assignment or subletting shall not operate as a waiver of the necessity for consent to any subsequent assignment or subletting.

17. Legal Compliance:

Tenant shall comply with all applicable federal, state and local laws, statutes, ordinances and codes, in effect now or as applicable to or as affecting any work or services performed under this Agreement. Tenant must pay all taxes and obtain all licenses, certificates and other authorizations required by them in conjunction with the provisions of this Agreement. Tenant must require all subcontractors to do so, also.

18. Notice:

All notices required herein shall be in writing and shall be deemed received when a copy thereof, addressed to such party as provided herein, is delivered by personal delivery of facsimile, or the next business day after being sent by a generally recognized overnight delivery service, or three (3) days after being sent by certified or registered mail return receipt requested, postage prepaid, to the address listed below or in such other address as one party may designate in writing to the other party.

EXHIBIT E-6

Scanned with CamScanner

For Landlord:                                    For Tenant:

_____                                 _____
_____                                 _____
_____                                 _____
_____                                 _____

With copies to:                                  With copies to:

_____                                 Millen, White, Zelano & Branigan, P.C.
_____                                 Attention: Adam D. Mandell, Esquire
_____                                 2200 Clarendon Blvd., Ste 1400
_____                                 Arlington, Virginia 22201

19.     Assigns:

All of the terms and conditions of the Agreement are binding upon and inure to the benefit of the Parties and their respective legal representatives, successors and assigns.

20.     Severability:

In the event that any provision of this Agreement is deemed to be invalid by reason of the operation of any law or by reason of the interpretation placed thereon by any court of any other governmental body, this Agreement shall be construed as not containing such provision, and any and all other provisions hereof which otherwise are lawful and valid shall remain in full force and effect.

21.     Counterparts:

This Agreement is comprised of several identical counterparts, each to be fully signed by the parties and each to be considered an original having identical legal effect. Facsimile and/or electronically scanned signatures shall be deemed original for all purposes.

22.     Governing Law:

This Agreement will be governed by and construed in accordance with the internal laws of the State of Ohio, without regard to the principles of conflicts of law thereof.

23.     Amendments:

No changes, amendments, modifications or discharge of the Agreement, or any part of it are valid unless in writing and signed by the authorized agents of the Parties or their respective successors and assigns.

24.     No Personal Liability:

Tenant expressly agrees that no member, official, employee or agent of Landlord will be individually or personally liable to it, its successors or assigns under any term or provision of this Agreement or because of his or her execution or attempted execution of this Agreement or in the event of any default or breach by Landlord or under this Agreement. The limitations on liability in this Section shall survive the expiration or termination of this Agreement and the expiration or termination of any obligation owing to any Party under this Agreement.

EXHIBIT E-7

Scanned with CamScanner

25.     Entire Agreement:

This Agreement and the Exhibits attached to it, constitutes the entire agreement between the Parties and no other warranties, inducements, considerations, promises or interpretations are implied or impressed upon the Agreement that are not expressly addressed in the Agreement.

26.     Waiver:

The waiver by either party of any agreement, condition, or provision contained in this Agreement will not be deemed to be a waiver of any subsequent breach of the same or any other agreement, condition or provision contained in this Agreement, nor will any custom or practice which may grow up between the parties in the administration of the terms of this Agreement be construed to waive or to lessen the right of both parties to insist upon the performance by the other party of all such agreements, conditions or obligations in strict accordance with the terms of this Agreement.

27.     Reserved Rights:

Nothing in this Agreement shall be construed as granting any party any rights in or to the intellectual property of the other party, and all such rights are fully reserved. Without limiting the foregoing, Tenant shall be entitled to all intellectual property and related rights with respect to all Events, including all multi-media rights whatsoever.

28.     Authority:

The individual officers, agents and employees of Tenant and Landlord who have executed this Agreement hereby individually represent and warrant that they have full power and lawful authority to execute this Agreement and perform the transactions contemplated hereunder on behalf of and in the name of their respective principals and/or employers.

IN WITNESS WHEREOF, the Parties to this Agreement have caused it to be executed and delivered by their duly authorized representatives as of the date first above written.

Trickle Productions, LLC                         APEX EVENT MANAGEMENT, LLC,

_____          _____
[Signature]                                      [Signature]

By: _____          By: _____Jeffrey Abel_____
[Printed Name]                                   [Printed Name]

Its: _____          Its: _____President_____
[Title]                                          [Title]

Date: __2-20-19__                                Date: ____2-21-19____

Scanned with CamScanner

2026

Construction/Set-up: September 2-September 24

Campgrounds open: September 23

Pre-party in venue: September 24

Main Event Runs: September 25-September 27

Tear Down: September 27-October 11

2027

Construction/Set-up: September 1-September 23

Campgrounds open: September 22

Pre-party in venue: September 23

Main Event Runs: September 24-September 26

Tear Down: September 26-October 10

2028

Construction/Set-up: August 30-September 21

Campgrounds open: September 20

Pre-party in venue: September 21

Main Event Runs: September 22-September 24

Tear Down: September 24-October 8

*2 week Load Out ?*

EXHIBIT E-9

Scanned with CamScanner

Tear Down:  September 25-October 9

Or:

Construction/Set-up: September 7-September 29

Campgrounds open: September 28

Pre-party in venue: September 29

Main Event Runs: September 30-October 2

Tear Down:  October 2-October 16

2023

Construction/Set-up: September 6-September 28

Campgrounds open: September 27

Pre-party in venue: September 28

Main Event Runs: September 29-October 1

Tear Down:  October 1-October 15

2024

Construction/Set-up: September 4-September 26

Campgrounds open: September 25

Pre-party in venue: September 26

Main Event Runs: September 27-September 29

Tear Down:  September 29-October 13

2025

Construction/Set-up: September 3-September 25

Campgrounds open: September 24

Pre-party in venue: September 25

Main Event Runs: September 26-September 28

Tear Down:  September 28-October 12

2 week load out ?

EXHIBIT E-10

Scanned with CamScanner

Exhibit B

## EVENT SCHEDULE

**2019**

Construction/Set-up: September 4-September 26

Campgrounds open: September 25

Pre-party in venue: September 26

Main Event Runs: September 27-September 29

Tear Down: September 29-October ~~13~~ *16*

*5KT*
*2 Week Load out?*

**2020**

Construction/Set-up: September 2-September 24

Campgrounds open: September 23

Pre-party in venue: September 24

Main Event Runs: September 25-September 27

Tear Down: September 27-October 11

**2021**

Construction/Set-up: September 1-September 23

Campgrounds open: September 22

Pre-party in venue: September 23

Main Event Runs: September 24-September 26

Tear Down: September 26-October 10

**2022**

Either:

Construction/Set-up: August 31-September 22

Campgrounds open: September 21

Pre-party in venue: September 22

Main Event Runs: September 23-September 25

EXHIBIT E-11

**Scanned with CamScanner**

## Exhibit A

### [Diagram and Description of Site]

EXHIBIT E-12

**Scanned with CamScanner**