# UNITED STATE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

**Brooke N. Mann**                                     :
856 Keystone Way
Louisville, Kentucky 40223                              :

                                                        :     Case No:

Plaintiff,                                              :
                                                              Judge:
                                                        :
**vs.**                                                 :     **FIRST AMENDED COMPLAINT WITH**
                                                              **JURY DEMAND ENDORSED HEREON**

**LNKBox Group, Inc.**                                  :
600 S. Spring Street
Los Angeles, California 90014                           :
C/O Incorp Services, Inc. (Registered Agent)
919 North Market Street, Suite 950                      :
Wilmington, Delaware 19801
                                                        :

and                                                     :

                                                        :
**Ryan Axford**
246 Coronado Avenue                                     :
Long Beach, California 90803
                                                        :
and                                                     :

                                                        :
**FlexTram, LLC**
71 Howard Street SE, Unit 3418                          :
Atlanta, Georgia 30317
                                                        :

**Apex Event Management LLC a/k/a**                     :
**d/b/a Lost Lands Music Festival**
**a/k/a Excision**                                      :
15821 Ventura Blvd. Ste. 370
Encino, CA 91436-2909                                   :
C/O Sundoc Filings (Registered Agent)
3500 S. Dupont Highway                                  :
Dover, Delaware 19901
                                                        :
and                                                     :

                                                        :
**AEG Presents LLC, a/k/a/ AEG Presents**
**Boulder, LLC, a/k/a AEG Presents Ohio,**             :
**LLC, aka AEG Live Ohio, f/k/a, a/k/a**

**d/b/a Madison House Presents, LLC** :
**a/k/a Madison House**
CT Corporation System :
4400 Easton Commons Way Suite 125
Columbus, Ohio 43219 :

:

**Laura and Steve Trickle d/b/a Trickle**
**Productions** :
CT Corporation System
4400 Easton Commons Way :
Ste 125
Columbus, Ohio 434219 :

Defendants. :

## FIRST AMENDED COMPLAINT

Now comes Plaintiff Brooke N. Mann ("Plaintiff"), and for her Complaint, states as follows:

### PARTIES

1.      Plaintiff is domiciled in and a citizen of the State of Kentucky.

2.      Defendant LNKBox Group, Inc. ("LNKBox") is a business entity organized and existing under the laws of Delaware, with its principal place of business in Los Angeles, California, doing business in the State of Ohio.

3.      Defendant Ryan Axford ("Axford") is domiciled in and a citizen of the State of California, residing in Long Beach, California, doing business in the State of Ohio.

4.      Defendant FlexTram, LLC ("FlexTram") is a business entity organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia, doing business in the State of Ohio owned and operated by the owners and operators of LNKBox. FlexTram and LNKBox operated as express and implied partners and agents of each other. (Collectively, "LNKBox").

                                              EXHIBIT 1

5. Defendant Apex Event Management LLC aka, d/b/a Lost Lands Music Festival a/k/a Excision ("Apex") is domiciled in and a citizen of the State of Delaware with its principal place of business in the State of California. Apex contracted for the services of LNKBox, FlexTram, and Axford as LNKBox and FlexTram's contracted employee. (Ex. 1 attached) Apex coordinated the Event Services including maintaining or modifying the pathways upon which LNKBox, FlexTram, and Axford operated motor vehicles.

6. Defendant AEG Presents LLC, a/k/a AEG Presents Boulder LLC, a/k/a AEG Presents Ohio, LLC, AEG Live Ohio LLC, a/k/a, f/k/a, d/b/a Madison House Presents LLC a/k/a Madison House ("AEG") is domiciled in the State of Delaware with its principal place of business in California. AEG coordinated the Event Services including maintaining or modifying the pathways upon which LNKBox, FlexTram, and Axford operated motor vehicles.

7. Defendants Laura and Steve Trickle d/b/a Trickle Productions, LLC ("Trickle") is domiciled in the State of Ohio with its principal place of business in Ohio including owning, maintaining, or modifying the pathways upon which LNKBox, FlexTram, and Axford operated motor vehicles.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction under 28 U.S.C. § 1332.

9. This Court has personal jurisdiction over all Defendants.

10. Plaintiff is a citizen of the State of Kentucky.

11. Defendants are citizens of states throughout the United States, but none are citizens of the State of Kentucky.

12. Venue is proper under S.D. Ohio Local Rule 82.1.

EXHIBIT K-3                                    EXHIBIT 1

## FACTS AND CLAIMS COMMON TO ALL CAUSES OF ACTION

13.     The Lost Lands Music Festival is a three-day dinosaur themed music festival ("Event") at Legend Valley located at 7885 Kindle Road, Thornville, Ohio 43076-8818 presented, promoted, and controlled by all Defendants implied or through agreement to customers where all factual events described in the Complaint took place that led to Plaintiff's injuries and losses.

14.     At all times relevant herein, Apex owned, advertised, solicited, promoted, invited patrons to, and/or sold tickets to patrons to the Event and was one of the owners and entities responsible for overseeing the operation, maintenance, possession, inspection, safety, security, and control of the Event including transportation at the location where the Plaintiff was injured through its agents, assigns, contracts, and servants who were acting within the course and scope of their authority.

15.      At all times relevant herein, AEG owned, advertised, solicited, promoted, invited patrons to, and/or sold tickets to patrons to the Event and was one of the owners and entities responsible for overseeing the operation, maintenance, possession, inspection, safety, security, and control of the Event including transportation at the location where the Plaintiff was injured through its agents, assigns, contracts, and servants who were acting within the course and scope of their authority.

16.     At all times relevant herein, Trickle owned, advertised, solicited, promoted, invited patrons to, and/or sold tickets to patrons to the Event and was one of the owners and entities responsible for overseeing the operation, maintenance, possession, inspection, safety, security, and control of the Event including transportation at the location where the Plaintiff was

EXHIBIT K-4                                                          EXHIBIT 1

injured through its agents, assigns, contracts, and servants who were acting within the course and scope of their authority

17.     The Defendants individually or jointly provided a camping area for a fee, removed from the stages and concert areas but on the Event grounds the Defendants exclusively controlled, where the thousands of concert goers/invitees were permitted to rent campsites to stay for the three-day event including the Plaintiff who paid in full for all services provided her including venue transportation.

18.     Defendants joined in promoting and selling tickets for the Event to invitees/customers, including the Plaintiff. At all relevant times, Plaintiff was a business invitee of the Event by among others, all Defendants including LNKBox, Axford, FlexTram, Apex, and AEG, and Trickle for purposes of participating in all available activities on the premises while attending the Event including on venue transportation.

19.     The Defendants individually and collectively communicated with potential festival attendees, including Plaintiff, via advertisements, websites, and through social media about purchasing tickets, renting camping space, directions, concessions, merchants and merchandise, concert arrival, departure, transportation to and within the Event, and traffic concerns.

20.     The Event took place from September 24 through 26, 2021.

21.     Defendants provided the tractor and Tram, a motorized vehicle 4 wheeled tractor rented from Holmes Rental Station by LNKBox that pulled two Trailers ("Vehicle") owned by FlexTram intended to transport concert business invitees/patrons to and from locations within the Event venue for a fee pursuant to a contract with Apex through efforts of and coordinated and controlled by AEG and all other Defendants.

EXHIBIT K-5                                                      EXHIBIT 1

22. LNKBox is a California company that advertises transportation services combined with technology and advertising.

23. LNKBox provides targeted marketing experiences to passengers in the time they spend as passengers traveling from the parking lots or campgrounds to concert stages and venues.

24. LNKBox hired Axford as a driver of one of the Vehicles who, previous to the Event, had no experience operating the motorized Vehicle.

25. At all times relevant herein, Axford worked in the course and scope of his employment agreement with LNKBox, FlexTram, APEX, and AEG.

26. The Defendants knew or should have known Axford was inexperienced, inadequately supervised, inadequately trained, and incompetent to operate the Vehicle.

27. Axford had never operated a tractor and two trailers with patrons on board prior to being assigned to do so on or about September 24, 2021.

28. Prior to or on September 23, 2021, rain fell on the Event grounds. Due to the inclimate weather the Event ground conditions changed. The Defendants were on notice of the rain, made artificial changes to the Event grounds including but not limited to placing gravel and orange cones on the pathways and delayed allowing invitees to enter the Event grounds.

29. The Defendants impliedly and by agreement exclusively controlled the pathways and artificial changes made to pathways surface provided to Event patrons used by the patrons to drive their vehicles, walk, and the Event Vehicle transportation provided to the Plaintiff and other patrons.

30. Plaintiff and her friend purchased tickets to the Event in February 2021 for good and valuable monetary consideration who were at all times relevant business invitees and parties

EXHIBIT K-6                                                                    EXHIBIT 1

to the contract of admission on the premise and for purposes of transportation within the Event. Plaintiff ordered and purchased her Event tickets online from Front Gate tickets on April 6, 2021.

31.     Plaintiff purchased tickets for the entire three-day event and an additional ticket for early entry so that she and her friend could enter the Event campground to establish temporary residency the day before the featured music started, on Thursday, September 23, 2021, as permitted.

32.     Plaintiff received two wrist bands by USPS mail, and two wristbands for her friend by USPS mail. The wristbands were for early entry admission and to attend all festivities offered for the three-day Event.

33.     Plaintiff also purchased a car parking and campsite pass authorizing her to utilize the camping facilities during the multi day concert Event. This pass permitted Plaintiff and her friend to camp onsite and to park their car at the campsite Event.

34.     On September 23, 2021, Plaintiff and her friend drove from their home in Kentucky to Thornville, Ohio to attend the three-day Lost Lands Musical Festival held in Legend Valley from September 24-26, 2021.

35.     While they had purchased early admission tickets for the Event and camping, rain and traffic delays caused such a traffic problem that Plaintiff was unable to arrive at the Event campgrounds until early Friday morning on September 24, 2021.

36.     At about 5 a.m. on September 24, 2021, Plaintiff was directed by Defendants' agents and assigns to a parking and camping location at the Event via the Event pathways upon which the Defendants limited vehicular travel.

EXHIBIT K-7                    EXHIBIT 1

37.     The Plaintiff and her friend parked their car as directed, unloaded their belongings, and set up their Event camp site, finishing around 10:00 a.m.

38.     Plaintiff and her friend walked the Event campgrounds and concert area for a few hours.

39.     Plaintiff walked to the Event concert area to watch a musical act perform at about 3:00 p.m. on September 24, 2021.

40.     After the performance finished, Plaintiff and her friend walked back to the Event campsite around 4:30 p.m.

41.     It took Plaintiff and her friend about a half hour to walk back to the Event campsite. Once there, they rested for a while and then gathered items to return to the Event concert area around 6:00 p.m.

42.     Rather than walking the entire distance back to the concert areas, which was over a mile, Plaintiff and her friend were directed to transportation advertised and offered by the Defendants. The Plaintiff was solicited and paid $5.00 USD per person for a ride on the tractor and two trailers operated by Axford within the Event venue to the music area of the Event.

43.     The Event commercial transportation consisted of one tractor pulling two trailers (Vehicle) that was almost full of Event patrons on board that was operated by Axford on September 24, 2021.

44.     After paying for the ride, Plaintiff stepped up on the Vehicle (trailer) one of the two trailers pulled that was operated by Axford. Plaintiff and her friend chose seats on the trailer facing forward and toward the tractor driver, Axford.

45.     Plaintiff took her seat on the trailer that was not equipped with warnings, seatbelts, handrails, hand holds, or other safety or security restraint devices. Once on board

Axford started moving the vehicle up a hill on the Event premise. No warnings, instructions, or other information was provided to the patrons or Plaintiff for the Event transportation prior to or after the Plaintiff boarded the trailer.

46.     Within seconds Plaintiff noticed that the Vehicle was moving up an Event hill on a dirt and gravel path at what appeared to be an unreasonably high speed for the pathway conditions.

47.     Within seconds, Axford guided the Vehicle to the top of a hill, over and then down the hill toward the Event concert area destination.

48.     As the Vehicles reached the top and then proceeded down the Event hill Axford abruptly changed the course of the vehicle at a fork in the gravel dirt path to proceed to the left fork toward campsites instead of proceeding on the right fork toward the Event concert areas announced when the Plaintiff decided to accept the ride based upon this representation.

49.     Axford jerked the wheel counterclockwise to attempt the left turn down and across the hill on a curve and embankment located on a right turn on the path toward the campsite at the maximum speed the Vehicle was capable of moving as noted by a rabbit symbol on the throttle.

50.     All of the Defendants were responsible for the pathway travel, conditions, operation of Vehicles and decisions to modify the pathway conditions.

51.     All of the Defendants were responsible for the safety of the patrons while on the Event premises of which the Defendants controlled.

52.     Unbeknownst to the Plaintiff the Event pathway upon which the Vehicle was traveling had been inadequately modified by the Defendants individually and collectively by

EXHIBIT K-9                                                                    EXHIBIT 1

adding loose gravel and orange cones at or near the top of the Event hills, across the side of the hills, and embankments and the turn in the pathway where the eventual collision occurred.

53.     The additional gravel modification made the pathway more unsafe.

54.     The Defendants were responsible for the pathway conditions and were not knowledgeable, experienced, or educated in the proper manner to prohibit travel or ensure safe passage on the pathways to transport patrons in the Vehicle.

55.     The Defendants designated the pathways upon which the Vehicle operated and deviation from the pathway was prohibited.

56.     Axford was not adequately trained to navigate the pathway on the Vehicle receiving only a couple hours of verbal instruction and 1-2 days of operating the Vehicle but never trained to pull two trailers with patrons on board over the Event grounds.

57.     Adding patrons to the trailers drastically changed the weight and weight distribution of the Vehicle and how the vehicle reacted to the path conditions dependent on the limited suspension of the Vehicle, terrain, and change in the speed of the Vehicle that required specialized knowledge, experience and training.

58.     Axford had never experienced and was not taught how to safely navigate (or not proceed) the Vehicle full of patrons down the side of an embankment turn on dirt and gravel paths.

59.     The gravel and cone(s) were added earlier in the day or previous days because Defendants were on notice patrons' vehicles had slid down the embankment where the collision took place near the campers' tents and at the same point where Axford consciously operated the Vehicle before the collision.

60.     The Defendants who were notified of the pathway vehicular sliding down the hill problem and who added artificial measures including gravel and orange cones provided no notice or warning to other Defendants including LNKBox, Flextram, Axford, or the patrons despite knowledge of this defective and unsafe condition.

61.     As Axford operated the Vehicle full of patrons at the tractor's full speed forward, down the side of the hill and toward the left around the right turn on the embankment, Axford lost control of the vehicle while traveling at maximum throttle speed the Vehicle was capable.

62.     The Vehicle started to slide to the left down the embankment at the downhill right turn in the pathway, fishtailed, became airborne and finally tipped and rolled over.

63.     The tractor of the Vehicle rolled onto its left side and the trailers completely rolled over and on to the tops of the trailers while the Plaintiff was on board causing the Plaintiff to be violently thrown around the trailer and ejected with one of the trailers landing on top of her.

64.     Axford jumped to safety while the tractor was still in full speed mode as noted following the collision as the trailers continued to tip became airborne and rolled over as the entire Vehicle was still moving forward and to the left down the embankment.

65.     The Vehicle came to rest several feet from the moment Axford started to lose control of the Vehicle when he attempted the abrupt left turn at a maximum speed.

66.     As the vehicle started to tip and roll the Plaintiff was thrown about the Vehicle causing her body to strike the vehicle metal body, sides, roof, seats, and/or floor ultimately ejecting and throwing the Plaintiff to the ground.

67.     As Plaintiff was pinned under the Vehicle, she cried out to her friend for help.

68.     Plaintiff's friend heard Plaintiff's calls but could not extricate himself from also being pinned by the Vehicle.

69.     After about a minute, a man approached Plaintiff and her friend and asked if they were okay.

70.     Seeing that Plaintiff was physically injured, crying out in pain, and pinned beneath the Vehicles, the unidentified man called others over to help lift the trailers.

71.     Medical services arrived on scene about five minutes later to treat injured passengers on the rolled over vehicles, placed a brace on Plaintiff's neck, and moved her away from the gravel road to wait for further medical attention and transport.

72.     About five minutes after that, Emergency Medical Technicians (EMTs) arrived in an ambulance and started to triage injured passengers, including Plaintiff.

73.     EMTs informed Plaintiff's friend that Plaintiff was seriously injured from the rollover crash and needed to be life flighted from the Event to a hospital in Columbus, Ohio.

74.     The EMTs asked Plaintiff a series of questions while Plaintiff was in and out of consciousness and writhed in pain waiting for the life flight helicopter with her friend. Plaintiff was in severe pain and told her friend that she was scared and then lost consciousness again.

75.     The EMTs then stabilized Plaintiff on a gurney while monitoring her condition.

76.     A second ambulance then arrived and transported Plaintiff to the landing area for the life flight helicopter on the Defendants grounds. Plaintiff's friend was not permitted to accompany Plaintiff in the ambulance, and the EMTs would not tell him where Plaintiff was being taken.

77.     Plaintiff never regained consciousness at the scene.

78.     Life flight flew Plaintiff to Grant Medical Center in Columbus, Ohio.

EXHIBIT K-12                                                        EXHIBIT 1

79. Once Plaintiff arrived, hospital personnel stabilized Plaintiff by, among other things, placing her on a ventilator and inserting a chest tube to address her collapsed lung injury caused from the Event rollover crash.

80. Plaintiff's friend could not locate Plaintiff for several hours because the hospital had misspelled Plaintiff's name. He finally was able to locate Plaintiff and arrived at the hospital around 4:00 a.m. on September 25, 2021.

81. When Plaintiff's friend arrived, Plaintiff was sedated and unconscious.

82. Around 7:00 a.m., Plaintiff regained consciousness for a short period of time before losing consciousness again.

83. The hospital moved Plaintiff to the Level 1 Trauma Unit that permitted only one visitor for the duration of Plaintiff's stay.

84. Plaintiff's mother arrived at the hospital from Kentucky at around 11:00 a.m. on September 25, 2021.

85. For the next almost three weeks, Plaintiff remained at Grant Medical Center undergoing lifesaving treatment including surgery.

86. After about five days, Plaintiff was moved from the emergency trauma unit to the ICU.

87. After about a week, hospital personnel removed Plaintiff's chest tube and discovered an abscess.

88. Hospital personnel then discovered that Plaintiff had contracted pneumonia and MRSA caused by Defendants' actions and omissions secondary to Plaintiff's rollover injuries and treatment.

EXHIBIT K-13                                    EXHIBIT 1

89. The plaintiff spent the next ten days in the hospital being treated for her injuries and sepsis.

90. During that time, Plaintiff was rendered so weak and paralyzed by her injuries that she could not use her hands or arms, preventing her from lifting herself, writing, bathing, or feeding herself that continues by degree to this day.

91. After seventeen days in the hospital, Plaintiff was released by the hospital to return home to Kentucky with her mother by car.

92. Plaintiff had previously sold her condominium in Louisville, Kentucky to rent an apartment in Memphis, Tennessee as required for her employment with the Cheesecake Factory upon a new assignment for work to relocate.

93. Upon arriving in Kentucky, Plaintiff was forced to move into her mother's house so that her mother could provide care for her due to her disabling condition.

94. Plaintiff spent the next months at her mother's house being cared for by her mother and friend and routinely being taken to the hospital and medical facilities for treatment.

95. After several months at her mother's home, Plaintiff was able to secure her own apartment with the nursing assistance of her family and friend where she continued to treat awaiting more surgery that was intended to alleviate her paralysis and loss of limb.

96. All efforts to revive the limb have failed and nerves from the brachial plexus injury are permanently damaged resulting in the lost use of her left upper limb.

97. Plaintiff has continued to routinely treat with various medical providers for therapy and evaluation, including daily visits to receive daily injections to treat MRSA and physical and occupational therapy.

98. Plaintiff is scheduled to have additional surgery once it is determined the MRSA is dormant.

99. Plaintiff continues to struggle to use her right hand with only finger movement in her left hand and remains partially paralyzed due to injuries to her upper left extremity.

100. Before suffering the injury from the rollover crash, Plaintiff was promoted by her employer, The Cheesecake Factory, and was scheduled to be transferred to Memphis, Tennessee. Her first day of work was to be October 13, 2021, but the Plaintiff was unable to work due to her disabling injuries and has since been reassigned to a position of desk work with the use of only one hand to operate a computer.

101. Because of her debilitating and permanent injuries, Plaintiff has remained in Louisville Ky. and has been prohibited from returning to her job she held prior to the collision and injury is.

102. The Plaintiff is unable to work at her computer full-time effectively for an extended period of time and when she works, she does so in a limited capacity.

103. Plaintiff was forced to cancel the lease in Memphis and her Cheesecake Factory job she was originally assigned was assigned to another person.

104. Plaintiff is still unable to work or use her left arm/hand as a result of her injuries and continues treatment for MRSA and potential future surgeries in an effort to regain feeling and use of her hands. The Plaintiff suffers from permanent and substantial physical deformities and disabling physical and psychological injuries.

105. At all times relevant, Defendants individual and collective actions and omissions were a direct and proximate result of Plaintiff's damages including her acute and permanent physical and psychological injuries, economic, noneconomic losses, permanent and substantial

EXHIBIT 1

physical deformities, permanent disabling physical and psychological injuries, need for treatment, cost of medical billing, lost wages, and earning capacity impairment.

106. As a direct and proximate result of the Defendants individual and collective negligent and malicious acts and omissions, Plaintiff sustained permanent and substantial physical injuries and deformities to her person requiring medical treatment and incurred medical expenses in the past, and she will continue to require medical treatment and incur medical expenses into the future from the loss of use of her left upper extremity.

107. As a direct and proximate result of the Defendants individual and collective negligent and malicious acts and omissions, Plaintiff has suffered psychological injuries and conditions, mental anguish, pain and suffering, and emotional distress, and will continue to suffer psychological injuries and conditions, mental anguish, pain and suffering, and emotional distress into the indefinite future.

108. As a direct and proximate result of Defendants individual and collective negligent and malicious acts and omissions, Plaintiff has incurred undetermined miscellaneous expenses and expects to incur miscellaneous expenses into the future.

109. As a direct and proximate result of Defendants individual and collective negligent and malicious acts and omissions, Plaintiff has suffered lost wages and her earning capacity has been permanently impaired.

110. As a direct and proximate result of Defendants individual and collective negligent and malicious acts and omissions, Plaintiff suffered and continues to suffer permanent and substantial physical deformities and disabling physical and psychological injuries, including but not limited to, the loss of use of her left upper limb (arm), two broken shoulder blades, a broken left clavicle, multiple broken ribs on the right and left side, a broken tailbone, multiple spine and

EXHIBIT K-16

EXHIBIT 1

pelvic fractures, a punctured lung, multiple cuts and lacerations, traumatic brain damage, eye injury, pneumonia caused by treatment of injuries caused by the crash, MRSA, and injuries to both hands and arms leaving her partially paralyzed.

111.    As a direct and proximate result of Defendants acts and omissions, Plaintiff has incurred undetermined miscellaneous expenses and expects to incur miscellaneous expenses into the future.

**FIRST CAUSE OF ACTION**
*Negligence/Recklessness Against Defendant Axford*

112.    All facts and allegations are incorporated into this cause of action by reference.

113.    Axford and the Defendants had a duty to exercise reasonable care for the safety of the passengers while operating the commercial Vehicle on the pathways designated by the Defendants.

114.    On September 24, 2021, Axford was incompetent and inexperienced in the reasonable and safe operation of the Tram and his actions were negligent and demonstrate a conscious disregard for the rights and safety of Plaintiff, the Vehicle passengers and motoring public, while acting with indifference to the consequences to others despite being aware of his conduct and knowing there was a great probability of causing substantial harm including personal injuries and was therefore negligent and/or malicious in the operation of the Vehicle while in the course and scope of his employment with Defendants and as an agent, assign, or contracted employee.

115.    Axford was negligent and malicious and his actions and omissions were a direct and proximate cause of Plaintiff's damages.

## SECOND CAUSE OF ACTION
*Vicarious Liability/Respondeat Superior of Defendant LNKBox/FlexTram.*

116.    All facts and allegations are incorporated into this cause of action by reference.

117.    LNKBox and Defendants individually and collectively are vicariously liable, including respondeat superior, for the negligent and malicious acts of Axford.

## THIRD CAUSE OF ACTION
*Negligence/recklessness Retention/Hiring/Training by Defendant LNKBox/FlexTram.*

118.    All facts and allegations above are incorporated into this cause of action by reference.

119.    LNKBox had a duty to act reasonably in hiring, instructing, training, supervising, entrusting, and retaining its drivers and other employees and agents, including Axford, and to promulgate and enforce policies, procedures, and rules to ensure that its drivers and vehicles operated were reasonably safe for the passengers on the Vehicle including the Plaintiff.

120.    LNKBox and Defendants had a duty to exercise reasonable care in hiring, training, and entrusting its Vehicle to responsible, competent, and qualified drivers.

121.    Axford was not qualified, was otherwise inexperienced and incompetent to operate the Vehicle.

122.    LNKBox breached its duties owed to the Plaintiff and was therefore negligent, malicious, and reckless in failing to adequately hire, train, and supervise Axford.

123.    LNKBox's negligence, malice, and recklessness was a direct and proximate cause of the Plaintiff's injuries and the damages.

## FOURTH CAUSE OF ACTION
*Negligence/Recklessness against Apex.*

124.    All facts and allegations are incorporated into this cause of action by reference.

EXHIBIT K-18                                    EXHIBIT 1

125. On or before September 24, 2021, Apex, through its agents, servants and assigns breached its duty of contractual and common law duty owed to Plaintiff and were negligent and/or malicious in providing or failing to provide a reasonably safe Event and vendors to its invitees/guests, including Plaintiff.

126. As a direct and proximate result of Apex's acts and omissions, Plaintiff sustained injuries and damages.

### FIFTH CAUSE OF ACTION
*Negligence/Recklessness Retention against Defendant Apex.*

127. All facts and allegations are incorporated into this cause of action by reference.

128. Apex had a duty to its invitees at the Event, including Plaintiff, to act reasonably and with ordinary care in hiring, instructing, training, supervising, and retaining its contracted transportation and maintenance employees and agents and to promulgate and enforce policies, procedures, and rules to ensure that its Event employees and agents were qualified and their Vehicles and operators and Event grounds were reasonably safe.

129. Defendant Apex failed and breached its contractual and common law duties of which the Plaintiff was a contractual and third-party beneficiary and was otherwise negligent, malicious, and reckless.

130. Defendant Apex's negligence, malice, and recklessness was a direct and proximate cause of Plaintiff's injuries and the damages.

### SIXTH CAUSE OF ACTION
*Negligence/Recklessness against Defendant AEG.*

131. All facts and allegations are incorporated into this cause of action by reference.

132. On or before September 24, 2021, AEG, through its agents, servants and assigns breached its duty of contractual and common law duty owed to Plaintiff and were negligent

EXHIBIT 1

and/or malicious in providing or failing to provide a reasonably safe Event and vendors to its invitees/guests, including Plaintiff.

133.    Defendant AEG failed and breached its contractual and common law duties of which the Plaintiff was a contractual and third-party beneficiary and was otherwise negligent, malicious, and reckless.

134.    As a direct and proximate result of AEG's acts and omissions, Plaintiff sustained injuries and damages.

## SEVENTH CAUSE OF ACTION
*Negligence/Recklessness Retention against Defendant AEG.*

135.    All facts and allegations are incorporated into this cause of action by reference.

136.    AEG had a duty to its invitees at the Event, including Plaintiff, to act reasonably and with ordinary care in hiring, instructing, training, supervising, and retaining its contracted transportation and maintenance employees and agents and to promulgate and enforce policies, procedures, and rules to ensure that its Event employees and agents were qualified and their Vehicles and operators and Event grounds were reasonably safe.

137.    Defendant AEG failed and breached its contractual and common law duties of which the Plaintiff was a contractual and third-party beneficiary and was otherwise negligent, malicious, and reckless.

138.    As a direct and proximate result of AEG's acts and omissions, Plaintiff sustained injuries and damages.

## EIGHTH CAUSE OF ACTION
*Negligence/Recklessness against Defendant Trickle.*

139.    All facts and allegations are incorporated into this cause of action by reference.

EXHIBIT K-20                                    **EXHIBIT 1**

140. On or before September 24, 2021, Trickle, through its agents, servants and assigns breached its duty of contractual and common law duty owed to Plaintiff and were negligent and/or malicious in providing or failing to provide a reasonably safe Event and vendors to its invitees/guests, including Plaintiff.

141. Defendant Trickle failed and breached its contractual and common law duties of which the Plaintiff was a contractual and third-party beneficiary and was otherwise negligent, malicious, and reckless.

142. As a direct and proximate result of Trickle's acts and omissions, Plaintiff sustained injuries and damages.

**NINETH CAUSE OF ACTION**

*Negligence/Recklessness Retention against Defendant Trickle.*

143. All facts and allegations are incorporated into this cause of action by reference.

144. Trickle had a duty to its invitees at the Event, including Plaintiff, to act reasonably and with ordinary care in hiring, instructing, training, supervising, and retaining its contracted transportation and maintenance employees and agents and to promulgate and enforce policies, procedures, and rules to ensure that its Event employees and agents were qualified and their Vehicles and operators and the Event grounds were reasonably safe.

145. Defendant Trickle failed and breached its contractual and common law duties of which the Plaintiff was a contractual and third-party beneficiary and was otherwise negligent, malicious, and reckless.

146. Defendant Trickle's negligence and recklessness was a direct and proximate cause of Plaintiff's injuries and the damages.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(I)     Under the First Cause of Action, Plaintiff demands judgment against Defendant Axford for personal injury in excess of $75,000.00 compensatory damages, along with interest, attorney fees and the costs of this action;

(II)     Under the Second Cause of Action, Plaintiff demands judgment against Defendant LNKBox for vicarious liability in an amount in excess of $75,000.00, compensatory damages, along with interest, attorney fees and the costs of this action;

(III)     Under the Third Cause of Action, Plaintiff demands judgment against Defendant LNKBox for negligence/recklessness in hiring and training of Axford in an amount in excess of $75,000.00 compensatory damages, punitive damages, along with interest, attorney fees and the costs of this action;

(IV)     Under the Fourth Cause of Action, Plaintiff demands judgment against Defendant Apex for vicarious liability and negligence/recklessness in an amount in excess of $75,000.00 compensatory damages, along with interest, attorney fees and the costs of this action;

(V)     Under the Fifth Cause of Action, Plaintiff demands judgment against Defendant Apex for negligence/recklessness retention in an amount in excess of $75,000.00 compensatory damages, punitive damages, along with interest, attorney fees and the costs of this action;

(VI)     Under the Sixth Cause of Action, Plaintiff demands judgment against Defendant AEG for vicarious liability and negligence/recklessness in an amount in excess of $75,000.00 compensatory damages, along with interest, attorney fees and the costs of this action;

(VII)    Under the Seventh Cause of Action, Plaintiff demands judgment against Defendant AEG for negligence/recklessness retention in an amount in excess of $75,000.00 compensatory damages, punitive damages, along with interest, attorney fees and the costs of this action;

EXHIBIT K-22                                                      EXHIBIT 1

(VIII) Under the Eighth Fourth Cause of Action, Plaintiff demands judgment against Defendant Trickle for vicarious liability and negligence/recklessness in an amount in excess of $75,000.00 compensatory damages, along with interest, attorney fees and the costs of this action;

(IX)    Under the Nineth Cause of Action, Plaintiff demands judgment against Defendant Trickle for negligence/recklessness retention in an amount in excess of $75,000.00 compensatory damages, punitive damages, along with interest, attorney fees and the costs of this action;

(X)   Interest, attorney fees and the costs of this action; and

(XI)  Any other relief in law or equity the Court deems appropriate.

Respectfully submitted,

*/s/ Scott E. Smith*
Scott E. Smith (0003749)
Trial Counsel
**Scott Elliot Smith, L.P.A.**
5003 Horizons Drive, Suite 101
Columbus, OH  43220
Telephone:     (614) 846-1700
Facsimile:     (614) 486-4987
Email:         ses@sestriallaw.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

The undersigned Attorney for Plaintiffs hereby demands a trial by jury on any and all triable issues, such demand being made pursuant to Rule 38 of the Federal Rules of Civil Procedure.

.

*/s/ Scott E. Smith*
Scott E. Smith (0003749)

23

EXHIBIT K-23                                    **EXHIBIT 1**